

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROSELINDA M. KESLER,

               Plaintiff,

      v.

MICHAEL J. ASTRUE,

               Defendant.

Civil No. 08-6104-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

Plaintiff Roselinda M. Kesler ("Kesler") seeks judicial review of the Social Security

Commissioner's final decision denying her continuing Supplemental Security Income benefits

under Title XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C.

§§ 405(g) and 1383(c). For the reasons that follow, the Commissioner's decision should be

affirmed.

1 - FINDINGS AND RECOMMENDATION

### BACKGROUND

Born in 1955 (Tr. 97), Kesler has a tenth-grade education. Tr. 116.[1] Kesler was awarded

SSI benefits based upon her asthma beginning in July 1998. Tr. 49. On January 21, 2004, the

Commissioner found that her condition had improved and terminated those benefits as of January

1, 2004. Tr. 50. Kesler appealed that decision and hearings were held before an Administrative

Law Judge ("ALJ") on February 15, 2006, and May 12, 2006. Tr. 695-726. On July 27, 2006,

the ALJ affirmed the Commissioner's decision. Tr. 27-35. The Appeals Council denied review

of the ALJ's decision (Tr. 7-9), making the ALJ's decision the Commissioner's final decision.

Kesler presently appeals that decision.

### DISABILITY ANALYSIS

The Commissioner has established procedures for evaluating initial disability claims and

evaluating disability cessation.

**A.     Initial Disability Determination**

In construing an initial disability determination under Title XVI, the Commissioner

engages in a sequential process encompassing between one and five steps. 20 C.F.R. § 416.920,

*Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ

determines if the claimant has "a severe medically determinable physical or mental impairment"

that meets the twelve month duration requirement. 20 C.F.R. § 416.909, 416.920(a)(4)(ii). If the

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer October 29, 2008 (Docket #14).

claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The ultimate burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. But if the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not

3 - FINDINGS AND RECOMMENDATION

disabled.  20 C.F.R. §§  416.920(g), 416.966.

**B.      Disability Cessation Determination**

In order to cease an existing benefit entitlement, the Commissioner must show that a claimant has experienced "medical improvement" since the decision granting the claimant disability benefits.  20 C.F.R. § 416.994.  In determining improvement, the Commissioner again engages in a sequential process this time encompassing between one and seven steps.

At step one, the ALJ determines if the claimant's impairment meets or equals a listing. 20 C.F.R. § 416.994(b)(5)(i).  As above, if the impairment meets or equals a listing the claimant remains disabled.  *Id.*  At step two, the ALJ must consider whether the claimant has experienced medical improvement.  20 C.F.R. § 416.994(b)(5)(ii).  If the claimant has not experienced improvement, she remains disabled.  *Id.*

If adjudication proceeds beyond step two, the ALJ must evaluate the claimant's RFC, described above.  The ALJ then determines if the claimant's medical improvement is related to her ability to do work activity.  20 C.F.R. § 416.994(b)(5)(iii).  If no change has occurred in the claimant's RFC since the comparison point decision (CPD), she remains disabled.  *Id.*

At step four, the ALJ considers whether certain exceptions apply to her findings.  20 C.F.R. § 416.994(b)(5)(iv).  These exceptions consider new diagnostic techniques, an erroneous previous decision, fraud, a claimant's failure to cooperate with the agency, or failure to follow prescribed treatment.  20 C.F.R. § 416.994(b)(3) and (4).  If these exceptions do not apply, proceedings continue.

If proceedings reach step five, the ALJ must determine if the claimant's combined current impairments are severe.  20 C.F.R. § 416.994(b)95)(v).  When the evidence shows that all

current impairments in combination do not significantly limit a claimant's ability to do work, the claimant is no longer considered disabled. *Id.* If claimant's combined current impairments significantly limit her ability to do work, assessment proceeds to step six.

At step six, the ALJ assess the claimant's current ability to do substantial gainful activity (SGA) regarding work she has performed in the past. 20 C.F.R. § 416.994(b)(5)(vi). If the claimant is able to perform SGA, she is not disabled. At step seven, the ALJ finally considers whether the claimant may perform other work in the national economy. 20 C.F.R. §416.994(b)(5)(viii). If the claimant is found able to perform such work, the disability has ceased. *Id.*

As in disability determination cases, the burden of establishing entitlement to disability benefits rests upon the claimant. *Tidwell v. Apfel*, 161 F.3d 599,601 (9th Cir. 1998); *Patti v. Schweiker*, 669 F.2d 582, 587 (9th Cir. 1982). However, for purposes of determining if disability has ended, the claimant is entitled to a presumption of continuing disability, requiring the Commissioner to produce rebuttal evidence. *Patti*, 669 F.2d at 586-87. This presumption of continuing disability does not affect the ultimate burden of persuasion, which remains on the claimant, to prove entitlement to disability insurance benefits. *Tidwell*, 161 F.3d at 601; *Patti*, 669 F.2d at 587.

## THE ALJ'S FINDINGS

The ALJ first found that Kesler continued to have medically determinable impairments, specifically, bipolar disorder, depression, degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), and asthma, as of January 1, 2004. Tr. 29. The ALJ found these impairments "severe" but also found that they did not meet or equal a "listed" disorder as of

January 1, 2004. *Id.*

At step two, the ALJ determined that Kesler experienced medical improvement as of

January 1, 2004. *Id.* The ALJ found this improvement related to Kesler's ability to perform

work activity because she no longer met a listed disorder. Tr. 30. The ALJ also found Kesler

"not entirely credible" (Tr. 31) and evaluated Kesler's RFC as of January 1, 2004 as follows:

> The claimant has the residual functional capacity to perform light
> work. Light work requires maximum lifting of twenty pounds and
> frequent lifting of ten pounds, and includes the capacity for
> sedentary work. She can perform only occasional overhead
> reaching and occasional neck rotation. She is limited at pushing
> and pulling with her left arm; she is right-hand dominant. She
> needs a climate-controlled environment. She cannot perform
> detailed or complex tasks or detailed instructions. She should have
> only limited interaction with co-workers and the general public.

Tr. 30 (citations omitted).

At step five, the ALJ found that Kesler continued to have a severe impairment or

combination of impairments as of January 1, 2004. Tr. 30. At step six the ALJ found Kesler

unable to perform past relevant work as of January 1, 2004 (Tr. 33), but found at step seven that

Kesler could perform work in the national economy as a small products assembler, telephone

survey worker, and cashier II. Tr. 34. The ALJ therefore found that Kesler's disability ended as

of January 1, 2004. Tr. 35.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359

F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts

6 - FINDINGS AND RECOMMENDATION

from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing*

*Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The reviewing court may not substitute its

judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*,

466 F.3d 880, 882 (9th Cir. 2006)), *see* also *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *see*

also *Batson*, 359 F.3d at 1193.

## DISCUSSION

Kesler contends that the ALJ erroneously evaluated her credibility, made erroneous

findings regarding her medical improvement, and failed to show that she can perform work in the

national economy at step seven of the disability cessation determination.

## I.    Credibility

At the core of Kesler's appeal is her objection to the ALJ's credibility determination. The

ALJ found that Kesler's "medically determinable impairments as of January 1, 2004 could have

reasonably been expected to produce some symptoms, but that the claimant's statements

concerning the intensity, persistence and limiting effects of her symptoms are not entirely

credible" (Tr. 31), based on a review of her medical record, and consideration of her drug use,

activities of daily living, and failure to quit smoking. Tr. 31-33.

### A.    Standards

Once a claimant shows an underlying impairment which may "reasonably be expected to

produce pain or other symptoms alleged" the ALJ, absent a showing of malingering, can reject

the claimant's testimony as to the severity of that pain or other symptoms only by offering

"specific, clear and convincing reasons for doing so." *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th

Cir. 1996); *see also, Robbins,* 466 F. 3d at 883. The ALJ's credibility findings must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The

ALJ may consider objective medical evidence and the claimant's treatment history, as well as the

claimant's daily activities, work record, and observations of physicians and third parties with

personal knowledge of the claimant's functional limitations. *Smolen v. Chater,* 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing

inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an

underlying impairment, the ALJ may not, however, make a negative credibility finding "solely

because" the claimant's symptom testimony "is not substantiated affirmatively by objective

medical evidence." *Robbins*, 466 F.3d at 883.

### B.      Analysis

Kesler contends that the ALJ erred in her credibility assessment in: 1) reviewing the

medical record by specific medical condition rather than evaluating Kesler's medical history

chronologically; 2) emphasizing that Kesler has continued to smoke, contrary to her doctor's

advice; and 3) selectively relying on portions of a lay witness report submitted by Kesler's

daughter, Christina Hannon, as to Kesler's activities of daily living.

#### a.      Kesler's Medical Record

Kesler contends that her "conditions must be reviewed chronologically in order to

determine whether she became able to work on January 1, 2004." Pl.'s Opening Br. 18. However,

Kesler cites no authority for this proposition and the ALJ's RFC and concurrent credibility

8 - FINDINGS AND RECOMMENDATION

analysis discusses Kesler's medical record thoroughly and at length. Tr. 30-33.

As to Kesler's asthma and COPD, the ALJ first noted that Kesler had an ER visit on June 14, 2003 for respiratory difficulties, her third visit in five days. Tr. 31. The visit showed that Kesler was not asthmatic, but was positive for marijuana and her respiratory distress was attributed to "a substance-induced mood disorder with paranoia, or a methamphetamine-induced psychosis, not a respiratory ailment." *Id.* From that point, the ALJ noted little evidence of ongoing asthma. In February 2004, Kesler had pulmonary function testing that showed a normal examination with vital capacity at the low limits of normal. The ALJ concluded: "That objective clinical testing suggests that claimants's asthma and COPD are very well controlled." *Id.*

The ALJ additionally noted that Kesler's complaints of depression and anxiety were related to her drug use, discussed below, rather than separate impairments. Tr. 32-33. The record supports these findings as well. Tr. 292-93, 308, 311.

The ALJ also discussed the onset of additional impairments and her rehabilitation from surgery and a regimen of physical therapy. Tr. 30-31. The ALJ noted that Kesler improved her functioning through a regimen of physical therapy and by September 2005 had only "mild deficits in left arm  and grip strength, but her right (dominant) arm was fully functional and she had otherwise intact functioning and normal gait." Tr. 32. While these additional impairments were severe, they were fully accounted for in the RFC.

In summary, the ALJ properly reviewed the medical evidence and effective medical treatment to discount Kesler's testimony regarding the intensity, persistence and limiting effects of her symptoms and assess her RFC.

        **b.**     **Kesler's Drug Use**

9 - FINDINGS AND RECOMMENDATION

The ALJ discussed Kesler's drug use at length. Tr. 31-33. Regarding Kesler's credibility, the ALJ noted that treating physician Dr. LeBow dismissed Kesler from his practice following reports, which he found credible, that Kesler was selling her narcotic medication. Tr. 32. The record supports this finding. Tr. 32. An ALJ may note a claimant's contradictory statements regarding drug use in finding a claimant not credible. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ also noted that Kesler's statements regarding the symptoms of her asthma and COPD were contradicted by the medical record which indicated that in June 2003, her respiratory distress was attributed to substance-induced mood disorder or psychosis and not respiratory ailment. Tr. 31.

### c.    Kesler's Activities of Daily Living

The ALJ's credibility finding also cited a lay witness report submitted by Christina Hannon describing Kesler's activities of daily living. Tr. 33.   Kesler now assert that Hannon's responses are "brief and cryptic," were taken out of context, and that the ALJ erroneously relied upon them. Pl.'s Opening Br. 19. The court  notes that Hannon's statement showed that Kesler performed shopping, cooking, and "day to day activities," (Tr. 174), household chores such as cleaning and laundry (Tr. 176), and talks with friends and family. Tr. 178. The ALJ's finding regarding Kesler's daily activities is thus based upon the record. The ALJ's credibility finding may consider a claimant's daily activities which are inconsistent with allegations of disability. *Lingenfelter*, 504 F.3d at 1040. The ALJ's credibility analysis properly noted Kesler's activities of daily living under this standard.

///

### d.    Smoking

Kesler challenges the ALJ's finding that her failure to stop smoking constituted a failure to follow treatment. Pl.'s Opening Br. 18. The Commissioner's regulations state: "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. § 416.930(a). It is permissible to deny benefits to a claimant who fails to follow medical advice to stop smoking, but first the ALJ must "'examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy' his impairment" and make specific findings. *Byrnes v. Shalala*, 60 F.3d 639, 641 (9th Cir. 1995) (citing *Doddrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Here the ALJ did not engage in that required analysis. Instead, the ALJ simply found that Kesler's failure to stop smoking impaired her credibility.

As noted by the Commissioner, it is permissible to determine a claimant's credibility based on an unexplained failure to follow prescribed treatment. An "individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p at *7. The problem here is that in her credibility determination, the ALJ failed to explain the manner in which Kesler's smoking effects her impairment, and failed to consider whether a smoking addiction provides an adequate reason for continuing to smoke contrary medical advice. Although such a claim was not made by Kesler, even if the ALJ's reference to smoking was error, she presented other independent bases, discussed above, for discounting Kesler's testiminy, each supported by the record. Thus, any error in reference to smoking is harmless. *Bray v. Commr. of*

*Social Security,* 554 F.3d 1219, 1227 (9th Cir. 2009).

### C.    Credibility Conclusion

The ALJ's credibility assessment of Kesler's testimony, based on a review of her medical record, and consideration of treatment, drug use, and activities of daily living is supported by the record and otherwise proper.

## II.    Medical Improvement

The ALJ found that Kesler experienced medical improvement as of January 1, 2004. Tr. 29. While this finding relates to all of Kesler's impairments, including her low back and leg pain, fractured right humerus, neck pain, left arm weakness, limited shoulder motion, and cervical degenerative disc disease with surgery and rehabilitation, (Tr. 29-31), Kesler now asserts that the ALJ erroneously found medical improvement in her cervical disc disease and asthma in finding her not disabled as of January 1, 2004.

### A.    Cervical Disc Disease

Kesler first asserts that the ALJ's finding "appears to be entirely based upon the improvement in her asthma condition." Pl.'s Opening Br. 15. Kesler subsequently suggests that the ALJ failed to address her additional impairments, specifically her cervical disc disease with associated symptoms. *Id.* In fact, the ALJ discussed Kesler's cervical spine condition at some length (Tr. 31-32), concluding it was an additional severe impairment and incorporating limitations from it into the RFC. Tr. 32

Kesler contends that the ALJ did not appropriately evaluate evidence pertaining to her medical improvement as of January 1, 2004. Pl.'s Opening Br. 16. Kesler asserts that "at a

minimum" she was disabled between her August 2004 cervical surgery and her recovery from

that surgery, which Kesler asserts occurred in February 2005. *Id.* Kesler does not explain,

however, the manner in which this impairment establishes disability under the Commissioner's

regulations.

The ALJ noted that Kesler developed neck pain in 2002, with degenerative changes, but

initially with no neurological problems and good range of neck motion. Tr. 31. The ALJ

discussed records pertaining to January 2004, which showed that Kesler had left arm weakness,

limited shoulder range of motion, and multi-level degenerative disc disease. *Id.* The ALJ noted

that this weakness persisted, and discussed Kesler's August 2004 cervical discectomy with

fusion. *Id.* The ALJ cited reports that Kesler's symptoms were unrelieved following surgery and

subsequently discussed Kesler's post-surgical rehabilitation at length. Tr. 31-32. The ALJ

concluded that by September 2005 Kesler "had only mild deficits in her left arm strength and grip

strength, but her right (dominant) arm was fully functional and she had otherwise intact

functioning and normal gait." Tr. 32. The ALJ appropriately found those limitations consistent

with a severe impairment that was fully addressed in Kesler's RFC. *Id.*

During the period under review, no treating or examining physician ascribed work-related

limitations to Kesler's cervical impairment beyond those described in the ALJ's RFC assessment.

Kesler's assignment of error instead points to her own complaints of neck pain. Pl.'s Opening

Br., 15-16. Because the ALJ appropriately found Kesler not credible, those statements do not

support Kesler's claim that the ALJ erroneously evaluated her cervical impairment.

**B.    Asthma**

Kesler also contends that she continues to have severe limitations related to her asthma. Pl.'s Opening Br., 17. Here Kesler cites treating physician Dr. Oppenheimer's report that her asthma is "really" severe and that she also has emphysema. *Id.*

While Dr. Oppenheimer characterized Kesler's asthma as severe, he offered no additional work-related limitations. Tr. 637. The ALJ continued to find Kesler's asthma and emphysema "severe" as of January 1, 2004 (Tr. 29-30) and the ALJ's RFC assessment restricted Kesler to a "climate controlled environment" with occasional overhead reaching. Tr. 30. These findings accommodate Dr. Oppenheimer's opinion that Kesler's asthma was "severe."

Finally, Kesler again cites her own testimony in support of the assertion that her asthma is a severe impairment. Pl.'s Opening Br., 17. While the ALJ found that Kesler's asthma, as of January 1, 2004, was a severe impairment, he also found that it no longer met a listing and that the impairments associated with asthma could be addressed appropriately in the RFC. The ALJ's credibility assessment of Kesler, discussed above, support the decision not to include any further limitations claimed by Kesler as related to asthma in the RFC.

In summary, the ALJ properly evaluated all of Kesler's impairments, including those related to cervical disc disease and asthma together with the work-related limitations caused by those impairments, in concluding that Kesler was no longer disabled as of January 1, 2004.

III.    **The ALJ's Step Seven Findings**

Finally, Kessler contends that the ALJ erroneously found that she can perform work in the national economy at step seven in the sequential proceedings. Pl.'s Opening Br. 19. Kesler specifically alleges that the ALJ's questions to the vocational expert failed to include limitations

Kesler described in her own testimony. *Id.* at 20.

In making a finding that a claimant can perform work in the national economy with non-exertional limitations, the ALJ is required to propound a hypothetical to a vocational expert ("VE"). *Tackett*, 180 F.3d at 1101-02. This hypothetical must be "based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2003). The ALJ need not include unsupported limitations. *Id.*

The VE testified that an individual with the Kesler's RFC could perform work as a small products assembler, telephone survey worker, and cashier. Tr. 719-22. The ALJ relied upon this testimony in finding that Kesler could perform work in the national economy at step seven. Tr. 34. Kesler's contention that this finding is flawed is based upon her own testimony. Because the ALJ appropriately rejected portions of Kesler's testimony, the ALJ was not required to include limitations alleged by Kesler but found not credible by the ALJ in her questions to the vocational expert. Kesler therefore fails to show error in the ALJ's step seven finding. The ALJ appropriately relied upon the VE's testimony and the ALJ's step seven findings should be affirmed.

## CONCLUSION

The Commissioner's decision that, as of January 1, 2004, Kesler is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED and JUDGMENT should be entered dismissing this case with prejudice.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 11, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 28th day of July, 2009.

Paul Papak
United States Magistrate Judge

16 - FINDINGS AND RECOMMENDATION